All right, Mr. Marshall, please call the next case of the morning. Yes, Your Honor. This case has been brought up to the 17-0-7-8-8 attorney. I also, on behalf of the defendant's attorney, Mr. Jane Doe, have a defense attorney. Arguing on behalf of the defendant's attorney, Mr. Sharon D. Raduno. Arguing on behalf of the defendant's attorney, Mr. Joel Hattori. All right, Mr. Raduno, on behalf of the appellant, you may proceed. Thank you, Your Honor. Good day, and may it please the Court. Jeff Raduno, I represent Kathy Malalko. Here to ask that the Court reverse the decision of the trial court for a few simple reasons. First off, the trial court didn't have jurisdiction to enter the judgment in the hearing. Secondly, the order entered really doesn't serve any purpose to further a trial on merits, which is the main purpose of Rule 219. And thirdly, there was no discovery of abuse in the narrow sense of that phrase. So going through each of these in turn. First, we have a case, Magi versus RIS Development Inc. Tells us essentially that there is no jurisdiction in this scenario. Now, is Magi consistent with the Dow case? It is not. They are at odds with one another. I would suggest that the first district in Magi and probably in another case called Padilla, B-A-D-E-A versus Phillips, came to a different conclusion from the district in the Yow case. Essentially, the Yow court, just ailing my two cents here, I think the Yow court was faced with what it perceived to be a real game of hide the ball and something that was very detrimental to one of the parties and really didn't see a way around this situation other than essentially to do what it did. Let me ask you sort of a point of question. Did the court in Magi address whether the trial court could impose post-judgment sanctions, as you suggest, for pre-judgment misconduct that had recently been discovered? But the issue here is whether the trial court can enforce a pre-judgment order. Right, Your Honor. And it's interesting because all of these cases parse these things a little differently or are faced with different scenarios. I believe Magi was talking about something that existed during the scope of the case and was then faced with what do we do after the fact. I believe B-A-D-E-A was also forced with something that happened during the case, motion filed after more than 30 days after the final judgment. So when we look at the universe of cases, though, and when we look at 219, it's interesting when you try and parse out what jurisdiction does the trial court retain, my reading would be that it is simply to enforce orders for sanctions that were where there was a motion pending before final judgment was entered. Basically designed to avoid the 2-1009 scenario of the trial court enters a bunch of discovery sanctions, possibly even almost killing someone's case, the plaintiff's case. The plaintiff then pops up and says, oh, 2109, I'm out. I'm going to take voluntary dismissal and probably come back for a do-over. Oh, but ah-ha, now I don't have to pay whatever sanctions have been entered because that's in that case. I'm going to file a new case. So if you look at the way that's constructed, I believe that's what it's designed to avoid. And if we take literally the word enforce, okay, the trial court has jurisdiction to enforce judgments, not necessarily to create or enforce orders, not necessarily to create new ones after the fact. How about the People v. Cole case, the Supreme Court case? Your Honor, I don't recall that case. Well, it states that the court has inherent authority on forced orders, and that's the way it gets its jurisdiction. Sure, in the common law, basically the common law proposition. My objection to that is that where we have a more specific rule, and here we do have 219, we would say we would apply the specific rule first. Secondly, the court may have inherent authority, but then we have, for example, bets in the whole line of cases that deal with contempt, which is essentially what was at issue here was violation of the court's prior order, and where there are all these due process procedures laid out, which the trial court here circumvented by going to 219. What's the due process that would be required here? In this case, Your Honor, I would suggest that what they really were asking for was an indirect criminal contempt charge, because it's something that happened outside the presence of the court, not obviously in its literal presence, not even within its constructive presence, so probably indirect rather than direct. Civil contempt, you said. Well, I would say what they probably wanted was criminal. Was there because there were monetary sanctions imposed? Partially because they wanted monetary sanctions imposed, so they wanted punishment, and they wanted punishment with regard to whether the behavior had stopped or not, which is where I would distinguish it from civil. What did they entitle it? I'm sorry, Your Honor. What did Jane Doe entitle the petition? Actually, it was passed as a motion for contempt. Just straight, it just said motion? I didn't say indirect. I believe it was a motion for civil contempt. I have civil contempt. And then the reason I recall that is because criminal contempt motion, or again, basically the sequence of orders thereafter, I'm sure I'm telling you something you know, but I'll spit it out, there's a whole, there's a more detailed sequence of things that happens after a motion for indirect criminal contempt. Sure. Did they ever write the jury trial? Sure. The whole nine yards. And I'm not necessarily advocating for, hey, I wish my client were hanging with, you know, indirect criminal contempt, but the reality is, and one interesting byproduct of it here is, the court didn't want to follow that process, and therefore Jane Doe went off down this trail. One effect of that is, instead of being held to a criminal standard, my client was held to a civil standard. So if this court simply remands, then essentially she's been denied the due process of what was, by their contention, criminal behavior. Well, let's talk about civil contempt for a minute. Sure. What if it was just civil contempt? If it were just civil... She'd have to have a purge. You're so right. That's right. And that was dealt with in the midst of this hearing. It was established that there was no more existence of the account. The allegedly bad posts were taken down prior to the hearing, so there would have been nothing to purge at that point. Wasn't there a... Did it go back up? I'm sorry. Did it go back up? I don't believe it's gone back up since that point, Your Honor, since the time of the hearing. The removal of the account occurred immediately going into the hearing. But the removal of the posts occurred prior to the hearing. Okay. And I'm sorry, Your Honor. I just wanted to clarify a point. Isn't there a line of cases that say it's appropriate in both civil and criminal contempt cases to require the contemptuous party to bear the reasonable costs and attorney's fees of the proceeding? It would not be unreasonable to require a civil contempt order to bear the costs so long as the purge isn't done. I guess my point is the imposition of attorney's fees alone doesn't mean it's criminal contempt, does it? No. I would say the fact that the bad conduct was in the past is what made it criminal contempt. Well, it's always in the past, isn't it? Always in the past. Well, how far in the past, or is it still ongoing? It's like the difference maybe between mandamus and injunction. Are we stopping doing something bad, or are we punishing someone for doing something bad in the past? Is the bad conduct still ongoing is the question. The party is attempting, though, to coerce compliance with the court order. My guess is. Right? I mean, that's the nature of the civil contempt. Right. And with the civil contempt come two different protections. One is notice, and the other is an opportunity to be heard, right? That is correct. And that was granted. Those were granted in a somewhat different context. What do you mean? Well, I don't know that all of the due process for a civil contempt proceeding was required, given, and part of it, when I say that, is simply that the PERS should have solved the problem. The court should have looked and said, okay, if we're going down a civil contempt route, and I see where you're going, which is, well, monetary sanctions could have had those anyway. My contention would be that monetary sanctions would only be appropriate in light of a failure to purge. Well, the monetary sanctions would come in because there has been a willful, if that's the case, a willful failure to obey the court order. Any time there is a willful, and that essentially is condemnations. There's a willful failure to obey the court order. Therefore, it's contempt. Therefore, sanctions are appropriate. And what would be, you know, what are you purging there? There's nothing to purge. That would be my point, was the court should have looked at it and said, there's nothing to purge. This is now done. There is no, there's nothing properly before me. There's nothing to purge. Well, how about if, how about we send it back and have the court put a purge provision in? Could we remediate it into a civil contempt order, I think is kind of where the court's going with that question. Your Honor, all I'm saying is the civil contempt process is pretty well spelled out. I don't know why everybody else wanted to go down a different route. They did. I think it's a little unfair to send it back, basically, to remediate their, their trial court and their, Jane Doe's choice to go down a route that really functionally doesn't work. I mean, that's. Yeah, so he had basically a civil contempt hearing with no purge provision. Right. Because it was, there was nothing to be purged at that point in time. So he should have gone criminally. That was my logic at the time and invoked all the protections that come with that. So that, that's a bit of a hornet's nest. But at the end of the day, I think if you look at the big picture here, you take cases like Gallery to speak to the big picture about 219. The purpose of 219 is to have a trial on the merits. Well, let's talk about that. That was going to be my next question. I'm intrigued by your argument that 219 sanctions are not appropriate here because the sanctions must ensure discovery and a trial on the merits. That's the general rule, correct? Correct. How does that square with, square with the Shimanowski case? Your Honor, the Shimanowski case, to my recollection, as I read and I did not review what you were coming into today, I don't recall that it was factually in the same universe as this case. Right. But Shimanowski did hold, and I quote, A just order of sanctions under Rule 219C is one in which to the degree possible ensures both discovery and a trial on the merits. It doesn't say it has to be absolutely implied in all cases or imposed in all cases. So there's a little bit of a fudge factor in 219C based on that, isn't there? Sure. It's a case, though, Judge, or a situation where I'm concerned that the outward limit of the exceptions that we create start to consume the rule. I mean, then is it anything that happens in the scope of discovery or even related to or attached to discovery suddenly becomes subject to 219 as opposed to the panoply of contested choices? I see your argument. I think your point's well taken. However, to the extent that you're arguing that 219C must always be crafted to ensure a trial on the merits, I don't think Shimanowski says that. Always is a big word. Right. I think it implies the opposite. I would agree that always is a big word, but I think if you look at the gist of 219, that's the point of the exercise. 219 wasn't created to be kind of a panacea for all or a solution to all possible contempt issues. In fact, when you look at cases like Maggie and Hedaya, they actually took situations where people lied, and they said in the scope of discovery, and basically did the opposite of what the outcourt did. They said, no, that's not an abuse of discovery. I'm sorry. I'm launching into Malatesta as well here now. I mean, they basically said this isn't what that rule is about. So lying in the scope of discovery is something that the solution for that is maybe perjury or something else, or if it's something signed, maybe 137, depending on who signed it. That's a different universe of things. We don't use 219 to kind of just start bludgeoning people for everything that happens in the even arguably related discovery. And I believe two of those cases related to people lying in depositions or discovery responses. And even they didn't find that a post-judgment 219 motion for sanctions was suited. They said no jurisdiction. So when we look at kind of the big picture, when we look at the narrow picture, which what happened here didn't impede, impair, or even directly link to the discovery process other than it was a discovery order that provided this. But this in no way caused an abuse of the discovery process where it protracted the case or it caused somebody, you know, somebody didn't answer something 17 times or it kind of derailed discovery. That wasn't what happened here. This is much more a garden variety, what's their contempt sort of question. With that, unless Your Honors have other questions, I'll go back. Thank you. Thank you, Your Honor. Good day, Mr. Gutierrez. You may proceed. Good day. Thank you, Your Honors. My name is Joel Gutierrez. I'm here with Cynthia Eppley and Jane Doe. It's a pleasure to be here before you today. I believe you've got some tough cases up today. This is not one of them. Well, that's good to know. I'm glad someone told us that. This is a very simple issue, Your Honors. Before we get into 219, you have to take a step back and know there's a fork in the road you have to face first, which is is this something that's subject to the court's inherent authority such that you don't need to look at the statute? If it is, then the court had jurisdiction, and we don't even need to analyze 219C and D and all the case law about this. What would they have inherent authority under? Inherent authority under the case law that says a court has the inherent authority to enforce its orders. Okay. So you're saying enforcement of the orders. Absolutely. Under 219 or under civil contempt? He's saying under general contempt. It's separate and apart from 219 or any other statutory provision. That's right. Thank you, counsel. Yeah. There's a common law principle that a judge has the inherent authority to enforce his or her orders. His or her orders. That's not under 219. Right. That's the inherent authority of the court to manage its stock and to enforce its orders. That's what it is. So are you submitting the court proceeding correctly under 219 or under civil contempt, or how did the court proceed in this case? The court proceeded under its inherent authority and under 219. Okay. The contempt issues are right here. We did not proceed under the contempt rules. Well, there was a rule to show cause that was filed. It was a rule to show cause. So it was initiated as a contempt. It was a motion for a rule to show cause. Which is contempt. Well, that was part of the relief that was prayed for. The other part of the relief was to enforce the protective order,  Yeah, which the protective order, though, is an order of the court that the party was seeking to enforce via a rule to show cause. Right. So it was initiated as a contempt. It was initiated in that manner. Yes, Your Honor. So what is your point? Are you saying that it didn't have to be initiated by contempt? It could have just been a simple attorney's fees imposed for a back for a rule of the court's inherent authority? Or it could have been a motion for sanctions under 219C without any reference to a rule to show cause whatsoever? Because we didn't need to go down that route. And frankly, the court didn't want to go down that route. So you're saying we could have held the court's ruling here notwithstanding whether it's civil or criminal contempt under 219C? Yes. That's right. Okay. But then it gets us back to his argument that 219C doesn't apply. So tell us why 219C does apply. 219C applies for the reasons laid out in YOW. YOW is a more modern case. It postdates the MAGI case. It is more directly on point and more authoritative in laying out the reasoning why a post-judgment sanctions order can be administered by the court. Again, MAGI is a unique case that is not on all fours with this case. Okay? It only speaks to losing jurisdiction at the close of a case for a Rule 219C motion. The motion that we brought was under 219C and D. MAGI doesn't apply to 219D. It only applies to 219C. So that's a big distinction, a big distinction. Because, as I say, our motion was brought under both subsections of 219. Regardless, the MAGI case lacked any motion for sanctions. There was no motion for sanctions in that case. It involved a post-judgment fishing expedition in discovery. We want to take debts, Judge. They might have conducted some shenanigans, some discovery misconduct. We want to explore all that. That's what that was about. And the court rightly said, No, we're not going to let you get into a case within a case after the judgment's been entered. We're not going there. That's what MAGI did. YOW is totally different. YOW is a case where the courtroom lost all jurisdiction over the matter, got removed to federal court. But the trial judge in the state court said, Regardless of that, I have the inherent authority to enforce my orders. I have the authority under 219C to sanction you for discovery misconduct. That's black-letter law. And MAGI does not trump that or supersede that. You may have said the MAGI words because you said discovery. So he's going to say, Aha, I'm going to answer you, and I'm going to raise your motion, your raise, because under 219B was saying it's not appropriate because the sanctions must ensure discovery in a trial on the merits. So how do you respond to that argument, that what was going on here was not designed to accomplish those purposes? That's an excellent point, Judge. And one way to address that is to take a look at 219E. 219E says a party shall not be permitted to avoid compliance with a discovery order by voluntarily dismissing a lawsuit. So if they can't avoid the effect of the protective order by not suiting the case, why can they avoid the protective order by getting the case thrown out against their will? That obviously says you can enforce a protective order after the case is dismissed. Otherwise, 219E, it makes no sense. It's meaningless. And what about Shimanovsky? Does that lend support to your argument, Judge? I think it does because in Shimanovsky, pre-lawsuit conduct was sanctionable. If pre-lawsuit conduct that's not the subject of a discovery order can be sanctioned, how can post-lawsuit conduct that was the subject of the order not be sanctioned? But sanctioned under what? The inherent authority of the court, Rule 219C, take your pick. Well, Shimanovsky involved 219C, didn't it? Shimanovsky was dealing with that, wasn't he? Yeah, I believe so, Judge. So then they don't need a purge provision. You don't need a purge provision. You don't need the due process, inherent consent proceedings. You don't need any of that. Although, as Justice Spence observed, she was provided notice. She was provided a hearing. She raised her right hand and swore an oath that day. Incidentally, my colleague and friend, Mr. Arduino, may have forgotten, but the day of the hearing, you know, after she provided an affidavit attesting to having removed everything from the website, purged Facebook, I pulled up my iPhone, looked up the page, and it was all online that day, the date of the hearing. Is that in the record or no? It's certainly in the transcript. I don't believe that's before you. So what would be the point of setting a purge amount here? I mean, if it's for inherent authority to control discovery and to impose a sanction, what would be purged? There's nothing to purge, but there was an order to be enforced prospectively. The protective order is in the nature of an injunction, a permanent injunction. You shall refrain from revealing Jane Doe's identity. That had to be honored and enforced going forward because she was going to spread my client's name all over the Internet. And attorney's fees were attached to that. And attorney's fees were a part of it. That's what we're talking about here. Now, the whole lack of jurisdiction argument, respectfully, is very disingenuous, and that's for three reasons. First, Mahelko moved the court to lift the protective order eight days after the case was closed. Why were they moving the court to lift an order that was no longer of any force in effect and could not be enforced under the court's jurisdiction? Obviously, they knew the court had jurisdiction. They wouldn't have moved the court to lift the order. If the court had no jurisdiction, they wouldn't have filed the motion. Exactly. Did they waive that issue? I think so. And they waived it again because Mahelko, well, another reason is that Mahelko used an alias when revealing my client's identity, Justin Guy. She admitted that on the stand. She used an alias. Why did she use an alias? Because she knew she was subject to the court's protective order, and she used an alias to get around that in contempt of court. Now, the other reason why this issue has been waived and why this argument is disingenuous is because if the court lacked jurisdiction, why did she show up at the evidence she was dealing and rule to show cause? If the court lacked jurisdiction, she could have thundered on at the notice and not shown up. Still, it would have been risky, wouldn't it? Well, that's the position that they've taken is that the court lacks jurisdiction. If the court lacks jurisdiction over me, I'm not going to voluntarily show up for a hearing. I'm going to assert that it lacks jurisdiction. They answered the rule to show cause, and they did not assert the court's lack of jurisdiction. So, again, waiver is everywhere in this thing. So, you know, shifting gears, another way to look at this, Jan, is if you think of a protective order as an injunction requiring my help to refrain from outing my client, that is the subject of Rule 307-81, which says you have to appeal an injunctive order, such as this protective order, within 30 days of its entry. They never appealed the protective order. They lived with the protective order. Wait one to 30 days went by, the case was closed. Then they sought to lift the protective order, which the judge refused to do. Then they went and they did just ignore it anyway, and they outed my client. So there's another waiver argument that by failing to appeal the entry of the protective order, they are simply out of luck. I've already addressed MAGI. I'll skip over to why it was not furthering discovery argument doesn't fly. The protective order itself obviously furthered discovery. My client wasn't going to sit for a deposition and reveal her identity unless she knew that was going to be protected information, confidential, maintained that way. That's the only reason she agreed to sit for a deposition, because she had the protection of that order. So it did further discovery. The order for World Show Cause was not just about the money. It was about enforcing the order going forward. This is a very contentious relationship between the parties. Allegations of bestiality and horrible stuff going on on the Internet. Character assassination. It's terrible stuff. It's like these guys who deny these school shootings. It's like psychopathic. My client needs to have. Is that really analogous to bestiality? It is. Allegations of bestiality, terrorism, criminal activity. This is one of like six lawsuits involving these parties. Trust me, Judge, when I say it's extreme, it's extreme. And that's why the court granted the protective order. It's not usual for me to be here on behalf of Jamie Dole. The court granted me leave to proceed protecting her anonymity because of this history. And that's very real. So a big part of the ruling on the motion for World Show Cause was enforcing the order. That's why part of the order. Paragraph four, subsequent F says the protective order has remained in full force in effect since its entry, and it remains a valid order of this court. It wasn't just pay $7,000 and move on. It was you need to honor that order. It's a valid order. I didn't lift it when you asked me to. I'm not lifting it now. You're stuck with it. You gotta abide by my order. So that is furthering discovery. It's furthering the discovery order that the court entered. So that's a reason why 219C applies, despite the argument about not furthering discovery or trial on the merits. The third argument is that no abuse of discovery occurred. Now, this is rooted in 219D, which is titled Abuse of Discovery Procedures. Malco argues that because discovery procedures were not abused, the court should not rely on 219D. The court can't believe in the speak. Did the court have to rely on D? It didn't have to, no. It could have relied on C. It could have relied on D. It could have relied on its inherent authority. But 219D does support the relief that was granted. That section says the court may order that information obtained through abuse of discovery procedures be suppressed. If a party abuses these discovery rules, the court may enter any order provided for in paragraph C. There is no time limitation. It doesn't say before a judgment or after a judgment. There is no temporal restriction on that clause. So that's another way they retain jurisdiction. Absolutely. Absolutely. And that's another reason why the Maggi case doesn't control this issue, because Maggi was very narrowly focused on section C. Subsection D was not an issue in Maggi. So you can just brush that case to the side. Now, as a final note, and I welcome any other questions you have, obviously, but as a final note, please, I encourage you to take a close look at 219 sub E, which I mentioned briefly, says that a party shall not be permitted to avoid compliance with discovery orders by voluntarily non-suiting a case. Well, if you can't sidestep a discovery order by non-suiting a case on your own volition, why should you be able to sidestep a discovery order when your case gets thrown out as meritless? It doesn't make any sense. Thank you, Your Honor. I have one question. We all know that the court can enter sanctions in a contempt proceeding, if there is a finding of a contumacious conduct, a willful violation of the court order, and so forth. Does 219 provide for the same relief, not relief, but the same sort of sanctions just within itself? Yes. Absolutely. To enforce the order. To enforce the order. And again, not to sound like a broken record, but I think the inherent authority of the court would also empower a judge to provide sanctions. So it's not dependent upon characterizing this as a contempt proceeding. That's absolutely correct. Okay. Thank you. Thank you, Mr. McFarland. Thank you very much. Mr. Arduno, you may address the Court in rebuttal. Thank you, Your Honor. I'll try to take the points in turn as best I can. As far as 219D versus C goes, D points to C for the actual remedies as far as monitoring the order or enforcing an order, rather. As far as temporal restrictions, D doesn't seem to open a new portal of time. And frankly, the vast majority of Supreme Court rules don't identify a temporal restriction because the ones directed at trial court conduct tend to assume, I believe, that it's while the trial court would have jurisdiction. So there isn't generally any temporal restriction built into things. So that doesn't really tell us anything here. Why should we build one in then? Basically, I'm saying go to the default, which is the end of jurisdiction is the end of jurisdiction unless there's an exception to it. The exception is built in. It can enforce orders that were entered before on motions that were entered before. Isn't the exception, though, that the court always has the inherent authority to enforce its orders? It's not enumerated here, but isn't that in essence a broader general rule? But doesn't that comport with logic in common sense? As he alluded to, if you can impose sanctions after the lawsuit's been voluntarily dismissed, why couldn't you do it on a motion? Well, I believe it seems intuitive. I believe E is simply, as far as 219E, that exact language, is simply saying that's to avoid the 2109 problem. That if you look back at cases, I'm sure we find cases where people try to avoid sanctions by 2109-ing their way out of it. That wasn't necessarily an invitation to start entering 219 orders after jurisdiction is otherwise lost. I think in a way he's creating a red herring with that argument. So as far as the general premise of inherent authority, well, at that point what I would say is why then did my colleague cast it as a rule to show cause? That's how this all started. That's what was responded to in the first instance was a rule to show cause. It wasn't initially cast as relying on the court's inherent authority. It was never cast that way. Let's assume it's miscast for the sake of the argument. You're aware of the well-established body of law that says the court's judgment can be upheld even if the court uses the wrong analysis and the wrong reasoning. So even if he started out in the miscast that you suggest, what he's asking for and the court nevertheless has inherent authority to do that if they do, totally aside from what his motion is labeled, what's the problem? The problem then would be that this was past conduct that would invoke, that I believe that once one goes down the path of invoking indirect criminal contempt, that that requires that whole panoply of rights as compared to this notion that the court has inherent authority to enforce its orders, which I don't disagree with. I mean, we'd have chaos if the court didn't. But I think once we start to talk about past conduct outside of court, we're going down that path. But let's assume the court didn't have to go down that path. The court went off on a tangent when right in front of it, it had the inherent authority as you were alluding to. So again, why is that wrong? At this point, I'm not necessarily talking about the trial court's decision. I'm actually talking about the actual facts. I don't believe the court has inherent authority without following the panoply of rights provided by that well-established body of case law for indirect criminal contempt. Amen, amen. That the court can just... Oh, no, that's okay. Go ahead. No, I don't believe the court can just go down that and say, oh, well, I'm going to avoid indirect criminal contempt by just using my inherent authority. I don't believe that the court can do that. It doesn't matter, basically, the Constitution. So that's the upper element. My colleague pointed out, we are friends, sometimes share a beverage. Be careful, this is being recorded. Of course. He pointed out the Facebook issue at the time of the proceedings. For whatever reason, it was still appearing on his cell phone, the page was still appearing on his cell phone. The trial court didn't look. And the trial court could not see it, so we don't know if that was some type of cookie or whatever they call those, like browsing history things. Well, like I tell my kids, nothing you ever post on the Internet goes away. Yeah, and that, I think, was an issue there. The trial court didn't look, and there was nothing there that the trial court could find, and I showed the trial court on my cell phone as well. Do you want to address the waiver issue quickly before we share a chapter? Sure. My first way of addressing it would be simply, just as a frame of reference, my universal time in the case involves just this piece. So the things that came before, I don't necessarily speak to the factual rendition given by Mr. Utari, but as far as the actual waiver of things, I don't believe that you ever waive a jurisdiction issue. If there was no jurisdiction, there was no jurisdiction. Can you revest the court with jurisdiction? Could I revest the court with jurisdiction by going down the path? No, I believe that the court has no jurisdiction, it has no jurisdiction as a function of subject matter. So, and I believe that the court is deprived of jurisdiction would be my logic there, but neither of us went down that direction firmly in our briefs. I guess I would just say, to your essence point, you show up for something, you get a court order. I am not inclined to tell, you know, to appear for something that serious. I'm not inclined to tell my client to not show up. And then... I understand. You're very on the side of caution. Yes, actually attempting to honor the court's orders and what's happening in court. Thank you. Anything further? Thank you, Your Honor. I appreciate it. Good to see you all again. Thank you. All right. I want to thank both counsel for the quality of their arguments, so we're very good here this morning. And we will, of course, take the matter under advisement, a written decision will issue in due course. We will stand adjourned until 1 o'clock for the next case. Thank you.